Case number 14-5285 Lawrence Niskey Appellant v. J. Charles Johnson U.S. Department of Homeland Security Mr. Rosenthal for the amicus curiae  U.S. Department of Homeland Security Good morning, Mr. Rosenthal. Good morning. Thank you, Your Honors. My name is Thomas Birch from the University of Georgia Appellate Clinic, appointed by this Court as amicus on behalf of Mr. Lawrence Nisky. I'm sorry. I'm just panicking. Are you not Mr. Rosenthal? No, Your Honor, I'm not. I'm Thomas Birch. I'm the supervisor of the Appellate Clinic. Oh, okay. Today, one of our students, Mr. Matt Rosenthal, will argue the case on our behalf, and I'll be sitting at the council table. I'm sorry. I apologize. I jumped the gun. That's okay. Thank you very much. All right. Mr. Rosenthal. Thank you, Your Honor. It may please the Court. My name is Matt Rosenthal, and I represent the appellant in this case, Mr. Lawrence Nisky. The district court should not have granted the motion to dismiss for two reasons. First, Nisky alleged in his complaint that he satisfied the timely contact requirement after each adverse employment action. And second, the agency should be stopped from asserting an exhaustion defense because of its two clear errors in violation of federal regulations. Nisky alleges that he satisfied the timely contact requirement on several occasions. First, in August 2002, he complained to his supervisors about racially discriminatory leave policies in his department. In September 2002, he contacted Allison Stafford, an EEO counselor in the agency, to complain that his security clearance suspension was rooted in racial discrimination and retaliation. In October 2002, he sent a letter to the Washington EEOC office. In 2006 and 2007, after security clearance was revoked and after he was removed, Nisky wrote letters to various agency officials who are logically connected to the EEO process to convey his intent to pursue a race discrimination complaint. What's your definition of logically connected to the EEO process? This Court and the EEOC have both identified two strains of agency officials who are logically connected to the EEO process. The first is agency officials who deal with civil rights and employment matters in the agency, such as one example is the director of civil rights in the USDA. And the second strain of case of officials are the officials who… If you go back, you can see that the folks that he wrote to, this Zawadne and Williams, did not qualify under that first responsible for civil rights. Yes, Your Honor. Okay, so we don't have that one in this case. Well, Nicole Heiser, he did write a letter to her, and she was the general counsel for labor and employment, which we argue that would be logically connected to the EEO process because she deals with… she's an attorney who deals with employment matters, which would involve the EEO process, discrimination complaints, such as that. So you think Nicole Heiser fits under that first category? Yes, Your Honor. Okay. And the other two officials… Are there any cases holding that someone with her position, because she didn't have an EEO title. She was essentially the employment person. No, Your Honor. There aren't any cases that specifically state general counsel for labor and employment. However, in Kluge v. Small, the district court for District of Columbia noted that the reason that there's a logically connected person's exception is because it's not supposed to keep someone like Mr. Nisky, who's not familiar from the process, from being able to get review of their case because they… He's plenty familiar with the process because the first time, back in September 2002, he went marching straight to the EEO counselor. He knew, and he'd already talked to the EEO counselor, and the EEO counselor said, let's see what happens when you have your final revocation. He had the final one, and he didn't go back to the EEO counselor. Yes, Your Honor. And Ms. Stafford violated the regulations when she told him to wait and come back because 29 CFR… She very well may have, but the event she said wait for has happened, and he knows who the EEO person is for that dispute, and he didn't go back to her and instead wrote to a general counsel who's a pretty high-level official. Well, yes, Your Honor. And that was almost four years later when they finally took the next action. In the interim, his department had been transferred from the Department of Defense to Homeland Security. So it was reasonable for someone in his situation to – he probably – he did not know who the EEO counselor would be in an agency he never worked in. So he… Would that be hard to find out? I'm not sure, Your Honor. However, given the fact that he was responding to the officials who were writing to him, and they were the ones taking these final actions, that he was responding to the only people he likely knew in the new agency, in the Homeland Security. And these individuals would be logically connected to the EEO process because they were the officials who… Well, he was transferred. It wasn't like this was right after he was transferred. Three years elapsed between when he says he was told that everything was being transferred to DHS and then when he wrote these letters. Yes, Your Honor. I think it's important to remember that Allison Stafford violated federal regulations the first day. He approached her the same day that his security clearance was suspended, and he satisfied his obligations under the regulations by doing that. However, she violated the regulations by telling him to wait because that, as the district court noted, is quite contradictory to federal regulations. This entire ordeal would not have happened but for this violation of the regulations. For all we know, this was the genesis of all the complications that happened. But she gave him a timing instruction, which then didn't follow, at least it didn't follow in the strict sense, right? Because there was a final replication, and he didn't find her equivalent in DHS. First, Your Honor, is that he wrote to officials who we argue are logically connected to the EEO process, which would satisfy his contact requirement. Even though he didn't go to an EEO counselor after the next actions were taken, he contacted individuals who satisfy this requirement. But isn't there two parts of that, if that's going to satisfy his exhaustion requirement, that he contact people who are logically connected to the decision and that he continue to press his discrimination claim as such? I mean, for example, when he went to the MSPB, in retrospect, he said, oh, that was a mixed case. But he didn't act consistently with that characterization because he didn't go to the federal circuit to appeal the MSPB decision. So it's a little hard to see that he continued or really ever pressed in an administrative forum the discrimination prong of his claim, even after it must have been obvious to him that the action that Alice and Stafford referred to had, in fact, now taken place. Yes, Your Honor. First, as to the MSPB, the agency had an obligation under 29 CFR 1614.302B, at the moment that the MSPB declined jurisdiction over his discrimination complaint, that the agency had to notify him of his right to contact an EEO counselor, which it did not do. But the question is, did they really have reason to believe that he was pressing a discrimination claim there? Yes, Your Honor. First, given the stage of the proceedings, the motion to dismiss, we would construe his factual allegations as true and that he alleges in his complaint that he put the MSPB and the various officials he wrote on notice of his discrimination complaint. It's important because, for example, there are communications that could be out there that we don't have access to where he could have addressed his discrimination complaints that we don't have access to, such as in his letter to Sally MacDonald, he lists six or seven different letters, and we only have access to three of those. We also don't have access to the briefs filed with the MSPB. So at this stage of the proceedings, we would construe that as true since we don't have access to a complete set of facts. And he also said that he provided the MSPB and the different officials he wrote to with complete access to the facts. They would likely have access to the case file from when he was fired and when he first contacted Allison Stafford. And also in his letters, he mentions discrimination, harassment, disparate treatment, prohibited personnel practices, which the first prohibited practice is discrimination on the basis of a protected basis. So someone such as Nicole Heiser, who is a lawyer for employment, would see this and realize that he is raising a race discrimination complaint, especially given the fact that he is a lay individual who is not trained in legal jargon. And he's not representative at that time? At which time? Well, he was represented up to a point, and then his lawyer – I know there was an issue in the case. His lawyer stopped representing him. That's true, Your Honor. And when was that? His lawyer stopped representing him when his security clearance was appealed within the agency, and that's when he missed the hearing for that and his lawyer stopped the hearing. When did the lawyer start representing him, I think is the question. When did he start representing? I'm not sure. I'm not sure if that's in the record, Your Honor. And the purpose of the exhaustion requirement is for the agency to be able to be put on notice of a discrimination complaint against them. This court in Congress have noted that it's not supposed to be a procedural labyrinth to keep individuals out from getting meaningful review. And in this case, Nisky tried diligently over the course of this matter to let the agency know that he had complaints of racial discrimination, and the agency violated its own internal regulations twice. So the MSPB decision is final in February 2008. Yes, Your Honor. And there was, at the end of that decision, instructions on what to do to appeal that decision. And he didn't do anything for, it looks like, about 20 months before he contacted an EEOC office. So what do we do with that 20-month gap there? He was told what to do and didn't do anything. Your Honor, the agency did not follow their obligations at that point in giving him guidance on how to proceed from there. The agency has a burden under the regulations after the MSPB declines jurisdiction to give him notice of his right to contact an EEO counselor. They did not do that in this case. Was he diligent to do nothing for 20 months? He appealed his case to the MSPB, and he was left without guidance in knowing what to do after the MSPB declined jurisdiction. So it was the agency who did not follow their obligation, and he attempted to pursue his claim, but he was left without guidance in this complicated administrative scheme. No, he figured out, he decided to contact the EEOC, but it took him 20 minutes, excuse me, 20 months to, 20 to 21 months before he did that. Yes, Your Honor. The time gaps, he contacted the agency after each action was taken by the agency. For example, after security clearance was finally revoked and terminated. I got you all the way up to the MSPB. I understand your arguments up to that point. I'm trying to figure out what to do, though. This seems to be a really long period of inactivity, complete inactivity by him after a decision that at least gave him some guidance on something to do. You didn't give him all the guidance. Yes, Your Honor. Well, the lack of guidance was contrary to the regulations, and he did not know how to pursue a discrimination complaint specifically instead of how to appeal the MSPB's decision. And second is that the time gap also existed because he was still waiting on a final action on his pension from the pension board. And this is also all negated by the fact that the entire time the agency did not seem to be emphasizing that time was of the essence. They told him, contrary to the law, to wait until further action was taken. It took nearly four years to actually revoke his security clearance and to remove him. And then at the end of all this, then tell him that, oh, you waited too long to assert this claim, and that they created the impression that time did not matter and violated the regulations in the interim while doing that, and that for this reason the agency should be a stop because, absent that, he would have never had an opportunity to have meaningful review of his claims. What do I do with the letter that's on JA 8081 in October 2002, that letter memorandum, where they say you're now being suspended without pay? And then they have a whole paragraph free that tells them exactly what to do if he wants to pursue an EEO claim. That was October 2002. He got this letter, told them exactly what to do, and he didn't do anything until 2006. Your Honor, in his complaint, Nisky does note that he sent a letter to the Washington EEOC office in October 2002. Implicit from the pattern of his communications. That's not what he told. This told him specifically where to go. Gave him a phone number, two different places to go, none of which was the EEOC itself. Your Honor, it's an argument that from Ms. Stafford's incorrect advice from day one, that it is from that point that Mr. Nisky satisfied his burden under the regulations. What makes it sound as if that advice is incurable? Does your argument depend on that proposition? No, Your Honor, because he does attempt to assert his claim after that by contacting other officials after final action was taken, which was the advice that Ms. Stafford gave him, where she said, wait until He's got written post-Ms. Stafford, you have the same agency, DOD, intervening and saying, okay, now there's been a change, another change. You're without pay, and here's what you do. I mean equitable estoppel, I understand, is an important argument for you to be making here. I understand Ms. Stafford shouldn't have done what she did, but it doesn't go on in perpetuity, does it? Doesn't this intervene and cut off that misconduct by the government, reset the clock, and they told him what to do? I think I didn't hear you saying this was not the right advice, and he ignored it. Well, Your Honor, if Ms. Stafford had given him the correct advice, then the suspension without pay period may never have happened. They may have reviewed his discrimination complaints and agreed that there was discrimination. It sounds to me as if you're turning equitable estoppel into permanent exoneration. No, Your Honor. Whatever the reverse is, exoneration. We would just argue that the agency should be, that estoppel here should mean that the agency cannot raise an exhaustion claim when they fail to follow regulations from day one. All right, so day one they fail to follow regulations. It is something exactly you're not supposed to do, and the question here is on day 20. Another agency decision was made, and they've been, oh, we're going to get it exactly right this time. Here's what you should do, and your view is too bad. It doesn't matter if once a month for the next seven years you go, here's what you should do, here's what you should do, because you gave bad advice the first time. Yes, Your Honor. Well, first, in regards to the letter on page 81, he does allege in his complaint that he wrote a letter to the Washington EEOC office in October 2002. So that is likely in response to this letter, and contacting an EEOC field office satisfies the contact burden under the regulations. This was the agency's EEOC office, right? It wasn't the EEOC. This was the Equal Employment and Cultural Diversity Office, which I assume was internal to the Defense Department. Yes, Your Honor. So that was an EEOC office, not the EEOC itself. Yes. However, even if he didn't contact the EEOC office within the agency, contact with a field office such as the Washington office that he wrote to satisfies that contact. And it's a little hard to say from the complaint. I mean, this gives him two alternatives, one of which is Chief EEOCD Arlington, Virginia. That's in paragraph 5 on JA81. And in his complaint in paragraph 16, he says to the EEOC. And, I mean, I guess there's a question there, maybe a fact question, of whether that matched up or whether that was reasonable. But he was told to contact something that had EEOC in it, and he says he contacted something that he understood to be the EEOC. That's your position? Yes, Your Honor. And the burden is not he doesn't, this Court has noted that the burden is not on him to follow the letter of the law, you know, rigidly. Does his complaint allege that's how I read that paragraph? Sorry, Your Honor. Does his complaint mention this October 2002 letter? No, it does not. So he doesn't even allege that that's how he read that letter as EEOC. Yes, Your Honor. I get people getting confused about EEOC. I can get that. But he doesn't even mention this letter and its guidance and how he reacted to it. Yes, Your Honor. He did not. So we don't have any basis for thinking that in this complaint, there's no allegation that there's any basis for thinking he thought he was satisfying this requirement. He just ignores this. Yes, Your Honor. Is there no further questions? Thank you. Thank you. We'll give you some time on rebuttal. Thank you. May it please the Court, my name is John Truong, and I represent the Department of Homeland Security in this case. We ask that the Court affirms that this Court judgment in this case because, as the Corset pointed out, Mr. Nisky has been more dilatory than diligent in pursuing his claim. I don't think that's a fair statement. I really don't think that's a fair statement. He did a lot. He was writing to everyone he could think of time and again and again, and the only time there's gaps is when somebody in the agency messed up. Well, but the records that we have in this case show that there were specific instructions from the agency after the September 2002 issue. There, as the Court pointed out, as Your Honor pointed out, in October of 2002, when the agency sent him the letter putting him on indefinite suspension, that letter gave him very specific information. That was going to suspension without pay, but he still wants to complain about this leave and this AWOL and suspending my security clearance, which is going to take my job away if that's what goes through. That's not what this decision in October 2002 was about. I'm still upset about those predicate things, and as to those predicate decisions, I've been told to wait until there's final action on my security clearance, which doesn't actually happen until 2006. And as soon as that happened, he started writing letters again. Right. He did write letters to the three officials as alleged in the complaint, but the issue here is that he did not contact the EEO office, despite the fact that assuming the truth of the allegation where Ms. Stafford told him not to contact an EEO office. And we're certainly assuming that at this stage. Okay, and then in 2006, he should have done that, that is to contact an EEO office. I know, but he was no longer in that agency anymore. He couldn't go back to Ms. Stafford. And so he said, wow, who made this decision? They're the ones who made it. They're the ones that I should complain to. That's correct, Your Honor, but back as the men in complaints alleged, that the agency did inform him there was a transition. The agency also informed him that the DHS will now continue to be the agency that will be responsible. We don't know that anything in that communication identified who the EEO people were. It just said you're now working for DHS and we're going to take this over, right? That's correct, Your Honor. Do we have that letter? The men in complaint does not, and we don't have that letter in the record for purposes of this case. So that could matter, right? Well, it may matter. It's a matter of fact dispute as to whether he knew, once he got over to DHS, to whom he should complain once Ms. Stafford's triggering event occurred. Right, Your Honor. But even assuming, let's take the discussion that we have in March of 2006, assuming that he did reach out to three different officials as he alleged in the men in complaints in February of 2006. And was also appealing the security denial, too. Right. And we did that, too. Well, that's one of the same, really. In paragraph 22, 23, and 24, he basically reached out to certain officials to appeal the, or to ask for a hearing to appeal the denial or the revocation of his security clearance. There is no allegations here that those communications contain any discrimination claims. Or even, and now as I understand it, Mr. Nisky is arguing that those officials are now somehow logically connected to the EEO process. But there's no evidence to show that those officials are actually connected to the EEO process. And furthermore, there's no evidence to show that Mr. Nisky expressed an intent to file an EEO claim. Because in order to qualify for this. Somebody said, does he not mention discrimination in any of those letters? The only one that he mentioned, he may have raised, was the one to Ms. Nicole Heiser. And that was after the removal. Nicole Heiser was a general counsel person. Ms. Nicole Heiser, she's an agency counsel. However, her job is actually to defend lawsuits filed by clients. Okay, but we can spare him from understanding exactly what her job duties were. She's in charge of, she has an employment portfolio. And I remember Ms. Stafford said, wait for this decision. And so now I'm in this new agency, but this person's in charge of employment. So I'm going to write to this person and tell them that the security clearance decision was contaminated by discrimination. Why is that not sufficient? Two things, Your Honor. As I said, putting aside whether Ms. Heiser was representing the agency or anyone else who may have complained to her. The issue here is that in order to qualify as a person logically connected to the EEO counseling process, there has to be some evidence that Ms. Heiser herself is responsible for EEO counseling. But isn't the point that the exhaustion requirement is don't go running into court because maybe there's a way to work it out more informally. So within a week after being removed from his position, Allison Stafford said, wait, wait to see what really happens with security clearance in the job. I mean, she took the position that the removal of security clearance wasn't an adverse employment action. So maybe he takes from that, okay, it's not until I lose my job. That's clearly an adverse employment action. Within a week of that, he turns around and he contacts Nicole Heiser, who is attorney advisor for labor employment at DHS, thinking, okay, I'm contacting a lawyer who does EEO stuff for my employer. And surely if she's not the right person, she'll tell me where to go and we can work it out if that's possible. That's really not enough? Well, it's not, because in order to be logically connected to the EEO process, the person to whom Mr. Nisky reached out to, or a brief person, has to have the responsibility of providing EEO counseling or to provide the process itself, the counseling process itself. He's supposed to know that, but she's not. She's not supposed to turn around and tell him, I'm not the right person. If you have concerns, go to these people. That's not her? So he's supposed to know more about how this process works than she is? Right. Here is the issue with that. As the court is aware, in the removal letter, in JA57 and 58, in the removal letter, the agency gave him very specific instructions on whom to contact, where to contact, and when to contact. And Ms. Nicole Heizer's name is not on it. In addition, and I'm looking at JA58 in the bottom paragraph there, it provided two different names and two different numbers for Mr. Nisky to contact. But for some reason, he ignored the very specific instructions that the letter gave him. We don't actually really know that, do we? I mean, maybe he's, this is years later, maybe he's misremembering. He's like, I contacted EEO when he writes his complaint. Possible that he actually had this letter in front of him and contacted one of these. I mean, the question is, is this something that is so clear on the face of a complaint that we think, reading all inferences and the like, most favorable to the plaintiff, that we can say, no way? Well, the allegation of the plaintiff's one, the letter that I just pointed out is two. But he did, I mean, the letter said you can go to MSPB, and he did. Yes, he did. And, you know, I know it's got a two, but it said that you can do one of these two things and he will be forgiven if he, like an awful lot of judges and some Supreme Court justices, finds the handling of mixed cases for MSPB and district courts less than a crystalline process. That's correct, Your Honor. And so he did. He was diligent. He was diligent. However, the issue here is that when he went to the MSPB, he was given basically two opportunities to specify whether he was bringing a mixed case appeal or just the fact challenging the removal. For example, looking at JA62, which is part of the MSPB application or appeal, and look at box number six, and it reads, quote, explain briefly why you think the agency was wrong in taking the action or making the decision. Now, end quote, that is an invitation for Mr. Nisky to basically outline. I wasn't given a chance to make my case. He doesn't say that my case did not involve discrimination. He says I didn't get a chance to make my case. Well, Your Honor, then may I direct your attention again to JA64, box number four. Again, he was given a second opportunity, and in that box, for example, it reads, quote, if you believe a specific law was violated, please identify the law and describe how the law you identify was violated, end quote. So he is actually given a second opportunity, if you will, to specify that he was also raising a discrimination claim on appeal. But Mr. Nisky, as the Court can see from the response to those two boxes, he did not mention discrimination. But that's fully consistent with discrimination or not discrimination. It's just, look, I've been trying to get my chance. My attorney abandoned me. I didn't know about the hearing. I've written all these people. I've been trying to get my chance to tell you my story, and no one will let you tell me my story. It just begs the question of what that story is. It doesn't show that it isn't a discrimination story one way or the other. Right, but here the MSPB forum gave him that forum, gave him that opportunity to ask whoever maybe listened to him to listen to his story. But for whatever reason, he chose not to say that I was discriminated against based on whatever factors when I was removed from the agency. So, therefore, when he appealed to the MSPB, he chose one route and not a mixed-case appeal. And from the reading, from how we read this, he was represented by counsel. If the Court can look at JA-65, he was represented by counsel on appeal with the MSPB. And so, from what we have, as opposed to mere speculation, what we have in front of us shows that he didn't file a mixed-case appeal. And, therefore, it is incorrect to suggest that because the MSPB denied his appeal on jurisdictional grounds, the agency somehow has an obligation to inform him of subsequent procedures. Because under the provision that counsel cited, 29 C.F.R. 16.4.302, the agency has an obligation to inform Mr. Nisky of additional procedure if the appeal was a mixed-case appeal. But as the Court can see, it's not a mixed-case appeal. So there's no additional obligation from the agency. Is that determination made on the basis of this form? I'm sorry, Your Honor. Whether it's mixed-case or not is made on the basis of this form? That's correct, Your Honor. And also, as I pointed out in the two boxes, Box 6 and Box 4, that we discussed, there was no mention of a discrimination claimed by… It's interesting. There's nothing on this form asking for grounds. You know, asking was it discrimination, was it… It asks for the type of adverse action. But it doesn't actually… I mean, he seems to have taken it, interpreted this as more procedural than substantive in terms of what he wants. He says, well, I want procedure. I know no one's going to decide my case based on this form. What I want is a chance, as Judge Millett was saying, to make my case. And I'm telling you what I want. And, I mean, consistently from the beginning, he thinks his trouble began because other people were getting all kinds of flexible leave and he wasn't. So he thinks the root cause, and that's been consistent of his mistreatment, was discrimination. And then he thinks if someone would actually listen to that, the thing would be unraveled and fixed. That's reading into facts that are not apparent in the MSPB form. I understand that… No, I'm reading the complaint. Oh, I understand that. Throughout the medical complaints, Mr. Misty alleged that he contacted different officials. But the flaw of the allegations is simply that he failed to contact an EEO officer within 45 days of each of the dispute acts. And so when he had the opportunity on appeal with MSPB, for example, as we discussed, Box 6 asked a very open-ended question. It was like, tell me what's wrong. I said, briefly describe why you think the agency was wrong. And that's a very open-ended question that Mr. Misty certainly can say I was discriminated against when I was removed because of my race, my gender, my what have you. I can't remember. Did you cite any cases on a mixed case being foreclosed based on a failure to mention discrimination in this form? Are there some cases on that? We did not cite those cases in our brief, Your Honor. And that was not an issue that was litigated per se. Well, if you had forms like this, but then when he got to the MSPB, his briefs raised discrimination, I assume that's what would control what he presented to the MSPB, would it not? Right. But I don't think the MSPB decision mentioned discrimination, Your Honor. We don't know what he argued to the MSPB. Well, at best, the MSPB decision did summarize the arguments, and may I direct your attention to JA69, and it is that first full paragraph beginning as a result of the revocation. And if the Court were to go down maybe one to third line, it summarizes Mr. Nisky's appeal. It says that, quote, on appeal, the appellant claims that he has not been provided or the due process due to him in the revocation of his secure appearance because the agency did not inform him, along with his attorney, of the dates of the personal appearance, et cetera. But later on page 71, they say near the end of the full paragraph beginning, thus, issues that extend beyond the scope of these requisite due process rights are not material factual issues reviewable by the Board. And so the Board is saying, look, we have a very narrow question in front of us, and that's all we're going to talk about, his arguments on that question, and anything else he's raising is not material facts for us, so we don't know what he did. Well, because based on the form that we just reviewed, he raised a very narrow issue, and those issues did not include discrimination under Title VI. Are these further submissions part of a public record? Yes, they are. They were filed along with a motion to dismiss and along with the plaintiff's complaints or amended complaints at the district court level. Is that something we can consider at this stage? Yes, Your Honor. The court can certainly take additional notice of certain documents specifically referenced in the complaint, especially when it comes to issue of administrative exhaustion. There's this whole other issue of even though the Board can't review the security clearance, we've got a Rattinger decision that says you could challenge knowingly false statements by coworkers or supervisors that launched you into the security revocation process, which might be consistent with his complaint, but you can imagine someone not being quite sure how do I deal with that type of argument because I've not only got now the mixed complaint, the MSPB, and then all the trappings that are associated with security decisions and what can be reviewed and what cannot. Well, the Rattinger issue didn't become an issue until he gets to the district court, and we raised that issue in our motion to dismiss. There's nothing in the amended complaints or the records that we saw here where Mr. Miske concerned himself with sort of the Egan issue and his progeny. And as the Court knows, when Judge Bates granted a motion to dismiss, he chose not to. He had an attorney for his complaint. For the district court? Yes, Your Honor. He was represented during the district court proceedings in front of Judge Bates. If the client has no other questions, we ask that the Court affirm Judge Bates' decision. Thank you very much. All right. Mr. Rosenthal has no time left, as I recall. Is that correct? Mr. Rosenthal, we'll give you two minutes. Thank you, Your Honor. I first want to address the different MSPB documents. Although there are certain forms in the record, we don't have access to all the documents that are involved with the MSPB dispute. There are briefs that were filed that the MSPB decision cites, and this is just another example that the agency is trying to create factual disputes that are not proper at this stage because we do not know exactly what type of allegations Mr. Niski did make, in fact, to the MSPB without access to these documents. Would you agree that if we obtain those other documents and look at them and there's no mention anywhere of discrimination, then Mr. Niski has a problem? He would likely have a problem. However, we would need discovery to be able to get access to those documents. No, I'm not sure. Just for the MSPB filings, that should be a matter of public record. Yes, Your Honor, that is true. However, he also, the MSPB in his decision noted that it said on page 69 that the appellate claims that the agency should not have revoked his security clearance at all. The only merits he's made this entire time has been his discrimination complaint. There's been no other, besides that he made a due process argument, but the only merits complaint that he has raised has been that his security clearance was revoked for racially discriminatory reasons. So that points to the fact that he likely did raise a discrimination complaint with the MSPB. The agency also- I have to say that doesn't follow clearly. Maybe it's true, but it doesn't seem to be following from that. Your Honor, at this stage of the proceedings, we would draw that inference in Mr. Niski's favor, and especially since the MSPB declined jurisdiction over the merits argument, and the only merits argument he has made has been a race discrimination claim, it was at that point that the agency had an obligation to notify him that if he has a discrimination complaint, that he has the right to contact an EEO counselor to do so, which the agency failed to do, and in doing so violated the federal regulations. Thank you. Mr. Rosenthal, you were appointed by the court to represent Mr. Niski in this case, and the court very much appreciates your able assistance. Thank you. Case is submitted.
judges: Millett, Pillard, Williams